UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELINO GOMEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | Case No. EDCV 06-1034 JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On September 28, 2006, Marcelino Gomez ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for Supplemental Security Income benefits. On October 24, 2006, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On October 30, 2006, Michael J. Astrue ("defendant") filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on April 4, 2007, defendant filed an Answer to the Complaint. On June 11, 2007, the parties filed their Joint Stipulation.

The matter is now ready for decision.

**BACKGROUND**

On July 19, 2004, plaintiff filed an application for disability insurance and supplemental social security benefits. (Administrative Record ["AR"] at 269-272). The Commissioner denied plaintiff's application for benefits initially and upon reconsideration. (See AR at 275-79; 281-86). On February 22, 2005, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 45). On April 5, 2006 the ALJ conducted hearings in San Bernandino, California. (See AR at 291-301). Plaintiff appeared at the hearing with counsel and testified through a translator. (Id.).

On June 20, 2006, the ALJ issued his decision denying benefits to plaintiff. (AR at 12-19). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 6-8).

Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ erred in finding that plaintiff's mental and physical impairments were not severe.

2. The ALJ erred in rejecting plaintiff's subjective complaints and credibility.

3. The ALJ erred by failing to properly consider the lay witness testimony by plaintiff's nephew.

///
///
///
///

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**DISCUSSION**

**A.    The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or...can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d

742, 746 (9th Cir. 2007). If the defendant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Parra, 481 F.3d at 746. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Parra, 481 F.3d at 746.

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Id. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.   The Severity of Plaintiff's Impairments**

Plaintiff claims that the ALJ erred in finding that plaintiff's physical and mental impairments did not constitute a severe impairment. In particular, plaintiff contends that the ALJ failed to consider plaintiff's tinnitus and dizziness. (Joint Stipulation at 4). In addition, plaintiff argues that the ALJ did not properly consider his sleep apnea and, moreover, the ALJ should have made an

4

effort to develop the record regarding plaintiff's sleep apnea. (Joint Stipulation at 4).

At step two of the sequential analysis, the ALJ must assess whether claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(ii). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b). An impairment is not severe if it is merely a slight abnormality, or combination of slight abnormalities, that has a minimal effect on the claimant's ability to do basic work activities. S.S.R. No. 96-3(p) (1996).[1]

The burden is on the claimant to establish that his or her impairment, or impairments, is severe. Parra, 481 F.3d at 746. If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ must find the claimant not to be disabled. Webb, 433 F.3d at 686.

Here, the ALJ found that plaintiff's impairments were not severe. While the ALJ found that plaintiff suffered from a number of medically determinable impairments, he did not find an impairment, or combination of impairments, that was severe and significantly limited,

---

[1] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991)(en banc). Although they do not have the force of law, they are, nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996).

or was expected to significantly limit, plaintiff's ability to perform basic work-related activities for twelve consecutive months. (AR at 16-17).

The ALJ noted that while plaintiff complained of tinnitus, all audiological tests and neurological evaluations were within normal limits. (AR at 18). The August 6, 2004 treatment notes from the Arrowhead Regional Medical Center's Department of Medical Imaging state that plaintiff complained of chronic tinnitus symptoms and dizziness but that there was no evidence of acoustic neuroma after an examination of plaintiff utilizing magnetic resonance imaging ("MRI"). (AR at 247). Plaintiff's February 15, 2005 audiologic evaluation produced normal results and the February 23, 2005 treatment notes state plaintiff was within "normal hearing levels." (AR 242-43).

In addition, the August 7, 2004 questionnaire completed by plaintiff plainly states that he has no problems paying attention, that he finishes what he starts, and is good at following written and spoken instructions. (AR at 100). When presented with a list of abilities and asked to check off the abilities that his illness, injuries, or conditions affected, plaintiff left the box labeled "Hearing" unmarked.[2] Similarly, in the third party questionnaire completed by plaintiff's nephew on August 7, 2004, plaintiff's nephew

///
///
///

---

[2] Plaintiff checked the box next to the following tasks: Lifting, Squatting, Bending, Standing, Reaching, Walking, Sitting, Kneeling, Stair-Climbing and Competing Tasks. (AR at 100).

6

did not circle "Hearing" when asked to circle items from a list of abilities that plaintiff's illness, injuries, or conditions affected.[3]

While the treatment notes from the Arrowhead Regional Medical Center indicate plaintiff complained of a ringing in his ear and dizziness that was characterized as tinnitus a few times between July 2004 and May 2005 (AR at 166, 170, 233, 240, 246), plaintiff offers no evidence regarding how the tinnitus resulted in any significant limitation on his ability to perform basic work-related activities. It is the plaintiff that bears the burden to establish that he has a severe impairment and that he is entitled to disability benefits. Parra, 481 F.3d at 746. Plaintiff failed to meet this burden with regard to his tinnitus.

With regard to plaintiff's sleep apnea, the ALJ stated in his decision that while plaintiff mentions sleep apnea, it is not documented by any medical evidence and there is no evidence showing it imposes any limits on plaintiff's daily day-time activities. (AR at 18). Plaintiff argues that the ALJ failed to make a reasonable effort to develop the record and obtain data regarding plaintiff's sleep apnea. (Joint Stipulation at 4-5).

In a social security case, an ALJ has an independent duty to fully and fairly develop the record and assure that the plaintiff's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 1991). This duty exists even when the claimant is represented by counsel. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). When the evidence is ambiguous, or if the ALJ finds that

---

[3] Plaintiff's nephew circled the following items: Lifting, Squatting, Bending, Standing, Reaching, Walking, Sitting, Kneeling and Stair-Climbing. (AR at 109).

7

the record is inadequate to allow for proper evaluation of disability, the ALJ's duty to develop the record is triggered and he or she must "conduct an appropriate inquiry." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). Although the ALJ has a duty to develop the record, the burden of proving disability remains on the claimant. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

In an earlier decision dated June 23, 2004, the ALJ noted that Lowell Sparks, Jr., M.D., an internist who appeared as a medical expert at the December 11, 2003 ALJ hearing, testified that plaintiff suffered from severe impairments including sleep apnea. (AR at 30). At the April 3, 2006 ALJ hearing, however, plaintiff did not testify that he continued to suffer from sleep apnea. (See AR at 292-301). Moreover, there is nothing in the record nor anything that plaintiff points to after 2004 that shows plaintiff continued to suffer from sleep apnea. And, as the ALJ found in his decision, there is no evidence that sleep apnea limited plaintiff's ability to do basic work activities. Accordingly, the Court finds that the evidence in the record was not so ambiguous or inadequate as to trigger the ALJ's duty to develop the record.

C. **Plaintiff's Credibility**

Plaintiff claims that the ALJ improperly rejected plaintiff's subjective complaints and credibility. (Joint Stipulation at 10-11). Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting plaintiff's testimony and improperly discredited plaintiff's testimony because it was not supported by the existing medical evidence. (Id.).

Pain of sufficient severity caused by a medically diagnosed "anatomical, physiological, or psychological abnormality" may serve as

the basis for a finding of disability. 42 U.S.C. § 423(d)(5)(A); see Light, 119 F.3d at 792. However, an ALJ need not believe every allegation of disabling pain. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Where there is no evidence of malingering, an ALJ may reject a claimant's testimony regarding the severity of his or her symptoms if the ALJ sets forth legally permissible, specific, clear and convincing reasons for doing so. Smolen v. Charter, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ must specifically identify what testimony is credible and what evidence undermines the claimant's complaints. Morgan v. Comm'r of the Social Security Admin., 169 F.3d 595, 599 (9th Cir. 1999).

A finding that the claimant lacks credibility cannot be based wholly on a lack of medical support for the severity of his pain. Light, 119 F.3d at 792. A claimant need not produce evidence of pain other than his own subjective testimony. Smolen, 80 F.3d at 1282. Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom. Id.; Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995). Rather, the claimant need only produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc); SSR 96-7p; see also SSR 96-3p. This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Smolen, 80 F.3d at 1282.

When evaluating a claimant's credibility, the ALJ should consider the claimant's reputation for lying, prior inconsistent statements

concerning his symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities. Smolen, 80 F.3d at 1284. Conflicts in a claimant's statements or testimony support a finding that the claimant lacks credibility. Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

With respect to daily activities, the Ninth Circuit has held that a specific finding that a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting may be sufficient to discredit a claimant's allegations of pain. Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). However, the Ninth Circuit cautioned that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d at 603.

The Ninth Circuit has found that activities, such as grocery shopping, driving a car, or limited walking for exercise do not "in any way detract from [a claimant's] credibility as to [his or her] overall disability." Vertigan, 260 F.3d at 1050. The Ninth Circuit has repeatedly stated that a claimant need not be utterly incapacitated in order to be disabled under the Social Security Act. See Fair, 885 F.2d at 603; Vertigan, 260 F.3d at 1050.

An ALJ's reasons for discrediting a claimant's testimony must be sufficiently specific for the reviewing court to assess whether the decision was impermissibly arbitrary. Bunnell, 947 F.2d at 345-56.

As discussed below, taken as a whole, the ALJ's reasons for rejecting plaintiff's credibility withstand scrutiny.

The ALJ found that plaintiff's "medically determinable impairments might be expected to produce the alleged symptoms, but his statements concerning the intensity, duration and limiting effects of the symptoms are not credible." (AR at 17). The ALJ concluded that plaintiff's subjective complaints regarding his symptoms did not establish a conclusion different from the finding of non-severe based on an examination of the medical evidence. (AR at 18).

In his decision, the ALJ discussed in detail all of plaintiff's alleged symptoms and found that there was no objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain and other symptoms alleged by plaintiff. (AR at 17-19). For example, with regard to plaintiff's allegations of mental impairments, the ALJ properly rejected these allegations based on the fact that plaintiff never had any psychiatric or psychological care or counseling, and that plaintiff had no primary mental health complaints at the hearing. (AR at 18); see Parra, 481 F.3d at 751 ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

With regard to plaintiff's tinnitus, the ALJ properly cites to the lack of objective medical evidence that could reasonably be expected to produce the symptoms of which plaintiff complains. (AR at 18). In discounting plaintiff's testimony regarding his physical pain and limitations, the ALJ properly cites to the conservative nature of the treatment that plaintiff underwent. In addition, in support his decision to discredit plaintiff's testimony regarding plaintiff's

physical limitations, the ALJ cites to the consultative orthopedic examiner's observation that the one major abnormal finding involving plaintiff's gait returned to normal when the claimant was not being directly observed. (AR at 18; 152, 155); see Smolen, 80 F.3d at 1284.

Finally, the ALJ properly cites to the leading nature of the questions that plaintiff's counsel asked plaintiff at the hearing, the apparent inconsistencies regarding plaintiff's English language skills, and his extensive daily activities to support the conclusion that plaintiff's testimony and statements were not credible. (AR at 18-19); see Smolen, 80 F.3d at 1284 (an ALJ may consider any testimony by claimant that appears less than candid, and the claimant's daily activities when determining whether claimant's testimony regarding the severity of his symptoms is credible).

Thus, the Court concludes that the ALJ did not err in rejecting plaintiff's subjective complaints and credibility.

**D.    The ALJ's Consideration of Lay Witness Testimony**

Plaintiff also alleges that the ALJ erred in failing to discuss the third party questionnaire regarding plaintiff's impairments that plaintiff's nephew completed. (Joint Stipulation at 15).

A person who is in a position to observe a claimant regularly and testifies regarding their symptoms and ability to work is a competent lay witness and an ALJ must consider his or her testimony. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). However, an ALJ does not need to meet the impossible burden of mentioning every piece of evidence presented in his or her decision. Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991); Orcutt v. Barnhart, 2005 U.S. Dist. LEXIS 39731, *25 (Sept. 27, 2005). Silent disregard of competent lay witness testimony is harmless if the Court can confidently conclude

that no reasonable ALJ, when fully crediting the testimony at issue, could reach a different disability determination. Stout v. Comm'r, 454 F. 3d 1050, 1056 (9th Cir. 2006).

On August 7, 2004, plaintiff's nephew, Santiago,[4] completed a third party questionnaire that contained a series of questions regarding plaintiff's daily activities and his abilities. (See AR at 104-12). When asked to describe plaintiff's day, plaintiff's nephew responded as follows, "Gets up take [sic] a shower prepare breakfast go to the store, go to church 3x a week prepare diner [sic]" (Id.) His responses to the questions in the questionnaire indicate that plaintiff cared for his parents and took them to their doctor's appointments; cooked his own meals daily, cleaned the house, did the laundry; and that plaintiff had no problem with his personal care and needed no reminders to take care of his personal needs and grooming. (AR at 105-106). The questionnaire indicates plaintiff was able to go out alone, use public transportation, ride in a car, and walk a short distance; shop in stores for food and other items; and that his ability to handle money had not changed since his illness. (AR at 107-08). In addition, the questionnaire indicates that plaintiff went to church three times a week and visited his sister once or twice a week. (AR at 108).

The ALJ did not discuss the information provided by plaintiff's nephew in his decision. (See AR at 14-19). The ALJ's failure to mention the additional evidence that plaintiff's nephew provided, however, constitutes harmless error, if it is error at all.

---

[4] The last name of plaintiff's nephew was illegible.

The ALJ was not required to explain why he did not rely on plaintiff's nephew's testimony because the relevance of the information that plaintiff's nephew provided was marginal. Specifically, he was not in a position to observe plaintiff regularly and provide testimony regarding plaintiff's symptoms and his ability to work. In response to question 6b of the questionnaire, "[h]ow much time do you spend with the disabled person and what do you do together?", plaintiff's nephew responded "[o]nce a week or twice. My family will BBQ and will invite him over." (AR at 104). There is no indication of the duration of or circumstances surrounding his observations of plaintiff. Because there is no evidence in the record suggesting that plaintiff's nephew was in a position to regularly observe plaintiff, plaintiff's symptoms, and his ability to work, the ALJ would not have been able to accord much weight to this evidence.

Moreover, plaintiff's nephew's testimony regarding plaintiff's symptoms was not particularly detailed and portrayed plaintiff as a self-sufficient individual who engaged in a variety of daily activities. He stated that plaintiff had no problem paying attention or finishing tasks; plaintiff could follow written and spoken instructions well; plaintiff got along with authority figures well; plaintiff handled changes in routine well; and, finally, plaintiff's nephew had never noticed any unusual behavior or fears in plaintiff. (AR at 109-110). With regard to plaintiff's physical abilities, his nephew indicated that plaintiff's ability to lift, squat, bend, stand, reach, walk, sit, kneel and climb stairs was affected by his illness, injuries, or conditions. (AR at 109). In addition, he stated plaintiff "can't walk more than a mile can't sit for no more than an hour - cant [sic] bend over" and that plaintiff could walk four blocks

before needing to rest for five minutes before he could resume walking. (AR at 109). Even if the ALJ fully credited plaintiff's nephew's testimony, the Court finds that substantial evidence supported the ALJ's conclusion that plaintiff was not disabled.

Thus, the Court finds that to the extent the ALJ erred by silently disregarding plaintiff's nephew's testimony, such error was harmless and cannot serve as the basis for remand. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (a decision of the ALJ will not be reversed for errors that are harmless).

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards. The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 7, 2007

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE